Filed 3/21/24

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| NEPTUNE MANAGEMENT CORP., | C098037 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2022-80003882-CU-WM-GDS) |
| v. | |
| CEMETERY AND FUNERAL BUREAU, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Stephen P. Acquisto, Judge. Affirmed.

Gurnee, Mason, Rushford, Bonotto & Forestiere, Steven H. Gurnee, Candace H. Shirley; Gibson, Dunn & Crutcher, Elizabeth K. McCloskey and Winston Y. Chan for Plaintiff and Appellant.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

1

Rob Bonta, Attorney General, Carl W. Sonne, Assistant Attorney General, Joshua A. Room, Armando Zambrano and Artin DerOhanian, Deputy Attorneys General, for Defendant and Respondent.

The Cemetery and Funeral Bureau (Bureau) cited Neptune Management Corp. (Neptune), a cremation services provider, for failing to hold in trust money Neptune received for cremation merchandise in violation of Business and Professions Code[1] section 7735. Neptune filed a petition for writ of mandate with the superior court challenging this citation, which the superior court denied. On appeal, Neptune argues (1) it satisfied an exception to the trusting requirement because it delivered the merchandise to the purchaser at the time of sale, and (2) the Bureau is equitably estopped from challenging its practices based on a prior settlement agreement. In the published portion of this opinion, we conclude Neptune did not deliver the merchandise as required by the exception. In the unpublished portion of this opinion, we conclude application of equitable estoppel against the government is unjustified under the circumstances. Accordingly, we affirm the trial court's order denying Neptune's petition.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Preneed Agreements Generally*

This case involves a unique type of contract called preneed agreements. Governed by the Short Act of 1965 (§ 7735 et seq.), preneed agreements are defined as contracts for "funeral services or for the furnishing of personal property or funeral merchandise, wherein the use or delivery of those services, property or merchandise is not immediately required" (§ 7735). "[I]t has been observed that the anticipated passage of time between execution of the [preneed] agreement and performance establishes a fertile field for fraud,

---

[1] Undesignated section references are to the Business and Professions Code.

deceit and imposition with the ensuing insolvency imminent." (52 Ops.Cal.Atty.Gen. 202, 204 (1969).) Consequently, the Short Act provides payment received under a preneed agreement "or under any agreement collateral thereto, shall be held in trust for the purpose for which it was paid or delivered until the contract is fulfilled according to its terms." (§ 7735.) "The Short Act sets out an elaborate plan for the control of funds accruing under preneed funeral contracts. Its obvious purpose is to recognize the utility of a prepaid funeral arrangement and at the same time assure its performance by requiring that *all* consideration paid pursuant thereto be held in trust until the need materializes." (*Mount Vernon Memorial Park v. Board of Funeral Directors & Embalmers* (1978) 79 Cal.App.3d 874, 885, italics added.) But, relevant to the resolution of this case, the Short Act does not apply "to cemetery property; cemetery commodities; cemetery service; or merchandise that is delivered as soon as paid for." (§ 7741.)

II

*The Current Dispute*

T.R. signed an agreement with Neptune on April 23, 1991, titled "Application For Pre-Need Agreement And/or Merchandise Or Property." (Boldface & some capitalization omitted.) The agreement covered the purchase of both merchandise and services: (1) a cremation urn, a cremation container, and a memorial plaque for $490 plus $31.85 sales tax; and (2) future cremation services for $470. Under the agreement, only the $470 was to be held in trust. The merchandise was also subject to a delivery provision that stated: "Purchaser is entitled to delivery and possession at seller's princip[al] place of business of each item described as merchandise stored or delivered herein only upon payment in full of the [t]otal [s]ales [p]rice of this [a]greement. Upon such full payment seller will deliver or warehouse for [p]urchaser all such items." And the agreement stated if T.R. terminated the agreement, the "portion of each pre-need contract that is fully refundable are the funds held in trust. The merchandise and sales tax provision of the agreement is non-refundable as this merchandise has already been

3

purchased and stored for your use at time of need. This merchandise is available for your pick-up at one of our warehouses."

Neptune formally accepted the agreement on May 1, 1991. On that same day, Neptune issued a warehouse receipt certifying Neptune received for storage at one of its warehouses the merchandise T.R. had purchased. The receipt had a "Delivery" term stating: "Upon [p]urchaser's written demand, [s]eller shall ship to [*sic*] the [w]arehouse [p]roperty to [p]urchaser [at] any other location pursuant to [p]urchaser's written instructions upon payment in advance of all shipping and handling charges." A Neptune employee signed the receipt but T.R. did not.

On July 31, 2020, the Bureau sent a notice of citation to Neptune stating an "investigation revealed a violation of [section] 7735 when the establishment sold consumer T.R. a preneed agreement contract, which included merchandise not immediately delivered, then failed to place the funds received for the undelivered merchandise into a trust, as required." The Bureau stated abatement would be a satisfactory resolution and did not assess any fine.

At the administrative hearing, the agent who investigated the citation testified he relied on the agreement and warehouse receipt to make the determination that no immediate delivery occurred. But he did not know whether T.R. ever physically received the merchandise prior to Neptune accepting it in its warehouse. Neptune's chief executive officer testified, based on his review of the files, the merchandise was "delivered" to T.R. at the time of sale. He explained that delivery to him meant either the "consumer can take delivery of the merchandise and keep it themselves or they could take delivery and put it in a warehouse." He further testified it was his understanding that Neptune's policy at the time was not to hold in trust funds for merchandise that was delivered to the purchaser under either scenario. After the hearing, the administrative law judge issued a proposed decision affirming the citation. The Bureau adopted the decision and affirmed the citation.

4

Neptune filed a petition for writ of mandate with the superior court challenging the Bureau's decision and the trial court denied the petition.

Neptune appeals.

## DISCUSSION

### I

### *Neptune Did Not Satisfy The Delivery Exception To The Short Act*

Exempted from the Short Act and its trusting requirements is "merchandise that is *delivered* as soon as paid for." (§ 7741, italics added.) Neptune contends the citation must be reversed because it delivered the merchandise at the time of sale, triggering the exception. We disagree.[2]

To the extent an administrative decision involves a question of law, including the interpretation of statutes and application of judicial precedent, the reviewing court exercises independent judgment. (*Akella v. Regents of University of California* (2021) 61 Cal.App.5th 801, 815.) In applying this standard on appeal, " ' "we review the matter without reference to the trial court's actions. In mandamus actions, the trial court and appellate court perform the same function." ' " (*Jefferson Street Ventures, LLC v. City of Indio* (2015) 236 Cal.App.4th 1175, 1197.)

" ' " ' "As in any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.]

---

**2**    The Bureau argues section 7741 need not be addressed at all because section 7735 requires trusting of all funds paid under preneed agreements and "any agreement collateral thereto." The Bureau reasons the merchandise agreement here was collateral to the preneed agreement, requiring Neptune to trust all funds. We do not address this argument because the parties did not address it below, and consequently neither the administrative law judge nor the superior court ruled on this issue. We decline the opportunity to reach the issue for the first time. (See *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767 [courts have discretion to decline to consider new theories raised on appeal].) We therefore address and resolve only the narrow question of whether Neptune delivered the merchandise under section 7741.

We begin by examining the statute's words, giving them a plain and commonsense meaning." ' " [Citation.] "[W]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible." ' [Citations.] If the language of the statute is clear and unambiguous, there is no need for judicial construction and our task is at an end. If the language is reasonably susceptible of more than one meaning, however, we may examine extrinsic aids such as the apparent purpose of the statute, the legislative history, the canons of statutory construction, and public policy." (*Earnest v. Commission on Teacher Credentialing* (2023) 90 Cal.App.5th 62, 74.)

Neptune contends there is no evidence it did not deliver the merchandise to T.R. when she signed the contract. Neptune relies on the investigating agent's testimony he did not interview T.R. and never confirmed whether she physically held the property before providing it to Neptune for warehousing. Because it is the Bureau's burden to establish a violation, Neptune contends the administrative law judge's finding that delivery did not occur lacked substantial evidence. But even considering the evidence in the light most favorable to Neptune's speculative assertion that T.R. physically received the property when she signed the agreement and held it for some time, this would not satisfy the delivery requirement contained in section 7741.

The agreement contemplated that T.R. would choose to either possess the funeral merchandise or have Neptune possess it in its warehouse for her. The undisputed evidence here is that T.R. at some point prior to May 1 elected the latter option. If T.R. did take possession of the merchandise when she signed the agreement on April 23, 1991, the warehouse receipt established she relinquished that possession on May 1, 1991, at the latest, by providing the merchandise to Neptune to hold in its warehouse. Neptune also executed the agreement on May 1, 1991. Neptune therefore accepted responsibility for the actual possession and retention of the physical merchandise under the parties' agreement. This contractual delivery scheme resulted in at best the constructive delivery of the funeral merchandise, which does not satisfy section 7741.

6

Constructive delivery is delivery of legal title but not the physical item. (See *Gordon v. Barr* (1939) 13 Cal.2d 596, 601 [explaining constructive delivery in the context of gifts]; Black's Law Dict. (11th ed. 2019) p. 541, col. 2 [defining constructive delivery as "[a]n act that amounts to a transfer of title by operation of law when actual transfer is impractical or impossible"].) Neptune insists constructive delivery of the merchandise satisfies the exception's delivery element because it is a form of delivery. Constructive delivery may be sufficient delivery in some legal contexts, such as when contracting parties explicitly approve of constructive delivery. (See Civ. Code, § 1059; *Paez v. Mutual Indem. etc.* (1931) 116 Cal.App. 654, 658 ["It is a matter, therefore, solely of the intention of the parties. If it was intended that the document should be in force before it was actually handed over, it will be deemed to have been constructively delivered"].) But the statute simply states "delivered." The common meaning of "delivered" is an actual transfer, from one to another, of a physical item. (See Black's Law Dict., at p. 541, col. 1 [defining delivery as "[t]he formal act of voluntarily transferring something; esp., the act of bringing goods, letters, etc. to a particular person or place"].) Constructive delivery is an abstract legal concept not included in the common understanding of delivery. Neptune provides no compelling argument for how the term delivered in ordinary, normal usage includes constructively delivered.

Even assuming there is an ambiguity, aids of statutory construction support this commonsense understanding. The Short Act was enacted to ensure funds would be available for future use of services and property when the purchaser needed it, even if the funeral home became insolvent in the interim. (52 Ops.Cal.Atty.Gen., *supra*, at p. 204.) This is seen in the Short Act's requirement for funds subject to the Short Act to be held in trust throughout the duration of the contract. (§ 7735 ["shall be held in trust . . . until the contract is fulfilled"].) And the purchaser's actual and sustained physical possession of merchandise addresses this risk. But the completed delivery of only legal title to funeral merchandise does not provide this protection because the purchaser would still be reliant

7

on the funeral home's future performance in providing the merchandise for use when needed. We see no reason the illusory protection provided by constructive delivery should be sufficient for the narrow delivery exception to the otherwise comprehensive trusting requirements. Concluding otherwise would contravene the Short Act by endorsing a "cosmetic manipulation of the form of the transaction" that circumvents the purpose and the plain language of the delivery requirement. (*American Funeral Concepts v. Board of Funeral Directors & Embalmers* (1982) 136 Cal.App.3d 303, 313.)

A regulation further supports this conclusion. In 1995, the Bureau's predecessor promulgated California Code of Regulations, title 16, section 1262 that states, "Delivery of merchandise within the meaning of . . . [s]ection 7741 shall mean actual personal delivery to a purchaser . . . . Any payment or payments received for funeral merchandise, where actual personal delivery of that merchandise will be delayed, shall be held in a trust . . . until that merchandise *is actually and personally delivered to, and is in the immediate possession of, the purchaser*." (Cal. Code Regs., tit. 16, § 1262, subd. (a), italics added.) The regulation further clarifies: "Neither the delivery of a warehouse receipt, nor any other form of constructive delivery shall constitute delivery of funeral merchandise within the meaning of [s]ection 7741." (Cal. Code Regs., tit. 16, § 1262, subd. (b).) This explicitly disallows Neptune's interpretation in favor of constructive delivery.

Neptune contends reliance on this regulation would be inappropriate because the agreement at issue here was signed years before this regulation was enacted. We are not applying the regulation but rather we are using it as an interpretative aid. This regulation clarifies the same statutory language in force at the time T.R. signed her agreement; it does not alter or modify the scope of section 7741. And an agency's interpretation of a statute is due some deference. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 ["An agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts"].) This regulation therefore

provides additional support that section 7741 does not exempt Neptune's constructive delivery of T.R.'s funeral merchandise from the trusting requirements. Neptune, therefore, did not satisfy the delivery requirement for section 7741.

## II

### *The Bureau Is Not Equitably Estopped From Enforcing The Short Act*

Neptune also argues the Bureau is equitably estopped from challenging its trusting practices because the Bureau's predecessor approved of its practices in a 1997 settlement agreement with Neptune. We find equitable estoppel unjustified under the circumstances.

### A

### *Pertinent Factual Background*

In 1994, the Bureau's predecessor filed an accusation against Neptune and related entities alleging they violated section 7735 and others by, inter alia, having far fewer cremation urns, cremation containers, and memorial plaques in storage than were obligated under active preneed agreements. The parties settled the dispute in 1997. The settlement agreement required Neptune to have enough merchandise in storage to match all outstanding purchases. For future agreements Neptune entered with its customers, the settlement required Neptune to trust all monies under section 7735, and to provide a notice to consumers that stated, in part: " 'Funeral merchandise for future use is being delivered to you as part of this transaction. You have a right to retain this merchandise under your custody or control or you may arrange for Neptune to take custody and control of the merchandise until time of need. Neptune will then provide you a receipt for said merchandise. . . . The money used to pay for the merchandise will not be refunded to you and is not being placed in trust.' "

The administrative law judge found Neptune's apparent reliance on the settlement agreement did "raise troubling issues of fairness. Such reliance, referred to as equitable estoppel, is a potential defense to the citation. It was not, however, expressly raised by

9

[Neptune] during the hearing and, therefore, is not properly before the tribunal.  [¶] . . . Even if the doctrine of equitable estoppel had been raised" its application to this case "would be in direct contravention of section 7735's protections against the excesses and potential abuses of pre-need arrangements."

B

*Equitable Estoppel Is Not Justified*

"The basic principles of equitable estoppel are well established and easily stated. 'Whenever a party has, by his [or her] own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he [or she] is not, in any litigation arising out of such statement or conduct, permitted to contradict it.' " (*Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 37.) "[E]quitable estoppel may be applied against the government where justice and right require it," but "an estoppel will not be applied against the government if to do so would effectively nullify 'a strong rule of policy, adopted for the benefit of the public.' " (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 493.)  Thus, it is applied against the government in " 'exceptional cases' " (*id*. at p. 501) where "the injustice [that] would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy [that] would result from the raising of an estoppel" (*id*. at pp. 496-497).

"Although estoppel is generally a question of fact, where the facts are undisputed and only one reasonable conclusion can be drawn from them, whether estoppel applies is a question of law.  [Citations.]  Moreover, where estoppel is sought against the government, 'the weighing of policy concerns' is, in part, a question of law." (*Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1360.)

Assuming Neptune could establish the elements of equitable estoppel, applying it against the government in this instance would permit Neptune to violate the Short Act. And not just for T.R., but for any agreements between Neptune and its customers the

10

settlement agreement covers. This would fundamentally undermine the Short Act by leaving many consumers unprotected. Neptune also does not provide any convincing argument it would be unduly burdened by adhering to the Short Act any more than every other licensed California funeral or cemetery business.

The bar is high to apply equitable estoppel against a government agency. For example, our Supreme Court found it appropriate in the foundational case *Mansell*, where a city purported to relinquish all claims to certain land and "exercised full municipal jurisdiction over it—granting building permits, approving subdivision maps, constructing and maintaining streets and city services, collecting taxes." (*City of Long Beach v. Mansell*, *supra*, 3 Cal.3d at p. 487.) After title to the land became clouded (*id*. at p. 467), our Supreme Court found this exhibited "the rare combination of government conduct and extensive reliance" justifying equitable estoppel against the government because "thousands of homeowners who, through the long continuing conduct of the government entities involved, ha[d] been led to believe and ha[d] acted upon the belief that the lands upon which they reside[d] [we]re their own private properties" (*id*. at p. 500). Neptune has not established such extreme behavior on the part of the Bureau nor such extreme and extensive damage to itself is present here. We consequently conclude equitable estoppel would not justify a reversal.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

/s/_____
ROBIE, Acting P. J.

We concur:

/s/_____
DUARTE, J.

/s/_____
BOULWARE EURIE, J.

12